We have four cases this morning and the first one is number 14-4194, Wysniewski v. Fisher et al., Mr. Heppner and Ms. Rand. May I please have the record? Richard Heppner for Appellant Thomas Wysniewski. Do you wish to reserve any time for rebuttal? Yes, I reserve three minutes, please. That's fine. Could I ask you about the stature of limitations issue? It might be a good place to start. Certainly. Because you've got a bunch of issues. And I know you're asking for continuing violations, but you don't need that, do you? You may need it for all of them. But it seems to me you have a decent argument that these matters should not have been considered on the pleadings and that the exhaustion requirement may revive some of these. Yes, Your Honor. First, the district court found that some of the claims were indeed timely. So even on that, there's no issue. As for the others, you're correct that we don't really need the continuing violations doctrine. The district court dismissed those largely based on I'm not sure what because the court didn't cite things in the complaint. Let's talk about some of the specifics. Sure. You know, if we're going to look at this as discrete acts of retaliatory conduct. Sure. First, there's an assertion that the filing of the misconduct charge itself that landed Mr. Wisniewski in the RHU was an act of retaliation. But those remedies with respect to that charge were completely exhausted by the summer of 2011 when the charges were dismissed, were they not? I'm not sure that's true, Your Honor. Those charges were dismissed on July 6, 2011, when Mr. Wisniewski won his internal appeal of the misconduct. At that point, he had served 88 of the 90 days that he was sent to the RHU for that misconduct. At that point, I think Mr. Wisniewski believed he would return. There was no point in appealing further and filing a grievance because he was going to return, get his job back, et cetera, et cetera. As it turns out, his job was not given back. And at that point, he started the grievance process that attested that the whole thing related back, that the whole thing was a Really what you're saying is that you've got to look at this as a continuum as opposed to looking at discrete acts. Because certain matters, for example, the damage to the television. Agreed. That was fully grieved through the administrative process by September of 2011. I think that's right, Your Honor. And all of those things were grieved. And although it is not clear from the face of the complaint when those grievances were resolved. So he filed some grievances. It's a pretty detailed complaint. And there are instances where he alleges specific dates when he got the final appeal, the final appeal decision. I believe only the November 29th, 2011 one is where he actually alleges that he filed or that he received final resolution of his grievance. Was that a defect in pleading on his part? And so should he be given leave to amend? I mean, I think he could be given leave to amend if the court wants that information or requires that information. Obviously, if certain claims were fully resolved outside the statute of limitations and there's no continuing violation, then those claims are not timely. But he wasn't required necessarily to plead those as part of his affirmative case. When did he start the prison grievance process? When did he begin the prison grievance process for any claim? Maybe we ought to back up that. Sure. The two claims that are primarily divorce, or at least the judge ruled on or said still may exist, are the library aid being terminated from that? Yes. And the photocopying. Yes. Are you pursuing all of them or just those two right now? I think those are the primary ones we're pursuing. We do think the court was wrong to dismiss the others on statute of limitations grounds, primarily because of what Judge Sirica pointed out, which is that the information as to whether those were untimely does not appear in the complaint. But he filed a grievance with respect to those two claims, did he not? Yes. Yes, he did. And does that toll the statute of limitations? Yes. Yes, it does under the PLRA. And this court's 2015 case of Pearson, I believe. But to be clear, even in the amended complaint, Mr. Wisniewski is acting pro se. Yes. He relied upon this continuing violation theory paragraph 402 of the amended complaint, says it's important to note that the above described challenge, which dealt with the loss of the prison job, I think, was the final link in exhausting administrative remedies of long list. But throughout this period of time, there were certain final decisions made that came before and after October of 2011. There probably were final decisions. They don't necessarily all appear in the complaint or in the attachments there. Okay. And he did rely on the continuing violations doctrine, largely, I think, by the time I filed my timely grievance about retaliation for not getting my job back or for being removed from my job. That was the point at which he really sort of realized that this was all a large continuum, a large consideration. So that's how he relied on the continuing violations doctrine. Why doesn't Shelby Murphy handle the First Amendment claim? Oh, sure, Your Honor. Shelby Murphy is a fairly straightforward case that has gotten slightly misinterpreted, I think. In Shelby Murphy, the prisoner sought special protections for his legal communications with another prisoner. Specifically, he wanted to be able to send mail from one prisoner to another, which is not permitted. And he said, well, this has legal advice in it, so we should get special more protections under the First Amendment than a normal communication should. The Supreme Court rejected that, said legal advice doesn't get any more special protection than any other First Amendment right, and therefore questions of First Amendment exercise and whether the prison can restrict them or retaliate based on them depends on whether the prison has a legitimate penological interest for doing so. So here, the court didn't ever get to this legitimate penological interest question and just said that there is no First Amendment right whatsoever for a prisoner to provide legal assistance to another prisoner. And that's just a misreading of Shaw. So the court should have gone to Turner v. Safran. Yes. Why don't we get Ms. Rand up and then we'll get you back. Sure. Thank you, Your Honor. Can you see me? Okay, good. I'd just like to apologize. I have a typo in my brief, if I may. It's on page 11. It says April of 2010 in two places. It should be April of 2011. I apologize. Just so you know, you better note your name since this is being taped. It's Attorney Deborah Rand for the defendants in this matter, appellees. Thank you. I guess the first question is, the prisoner can state a First Amendment claim by simply saying that he spoke with another prisoner, the guards didn't like him talking to the prisoner, so the guards threw him in solitary confinement. That could be, theoretically, a First Amendment claim, could it not? As long as there's constitutionally protected activity, yes. And why would the content of the speech here, that is what the prisoner told another prisoner, somehow strip away the First Amendment protections? In terms of the standing issue, Your Honor, or in terms of the First Amendment issue? Probably both. Okay. In terms of the standing issue, I'm not sure that it would strip it away, and I hesitate only because there seems to be a mixture of cases. What I would say first is that the continuing violation doctrine was raised by us in our motion to dismiss, because as Judge Manaske pointed out, it's actually pled as the basis for his otherwise late filing in his complaint and amended complaint. At paragraphs 402 and 403, and in the amended complaint 402 and 403, in the original 260 and 261. Because of that, we raised it as a motion to dismiss. So I think that's clear on the face of the complaint. Going then to the actual standing issue itself with respect to the providing of legal assistance. I thought that Mr. Wisniewski was claiming that it was his First Amendment rights that were being violated by retaliation. And I think there we have to, I think, I didn't read it that way, Your Honor. However, I think that he actually was claiming one thing. And what he was claiming is it's my First Amendment right to assist this other inmate, whose name is Pierce, with his filing. And that was the basis of his claim. When you look at Exhibit M to the original pleading, he did not reattach all his exhibits to his amended pleading. I did not object. I usually do not when it's pro se on the basis the court has them. Exhibit M, which is the grievance in issue, never says, I was exercising my rights to complain about library staffing issues or anything else. And I absolutely agree he has those rights. I don't dispute that at all. What he was saying is I have a constitutional right to assist Mr. Pierce in and of myself. No question Mr. Pierce could have filed a case if he was denied court access. Mr. Pierce is nowhere in this case. And that's what I think distinguishes this case from nearly everything else that's been cited with one exception. The Thaddeus case, Thaddeus X, which is kind of the big one we've both cited too. If you look at that case and the others, the actual injured plaintiff was a co-plaintiff. That comes back to my question. Isn't Mr. Wisniewski alleging that it was his First Amendment rights, not Pierce's, that were violated? I am not certain that he did that in his grievance. And even perhaps he did in his complaint, but I don't think he did in his grievance. And that's why we say it's procedurally defaulted. To the extent the court does read it as that way, that he is alleging his own right, what I would say is with respect to standing, the cases that have said there may be standing have been cases where the actual injured plaintiff is a co-plaintiff. The only exception, interestingly enough, is the case that I had cited in my original brief, the Rhodes case, which I felt obliged to point out because I thought it might be in conflict with what I was asking the court to do. So I think the court would have to work with that. I don't think you have to overrule it, but I'd probably at least distinguish it. With respect to the First Amendment claim that he has essentially a right of free association or he's relying on association, the Rizzo case, which is the primary case I think that he's relying on, when the court looks further, in a more recent case, Blaisdell, and that's 729F3-1237, same court, same circuit, backed away from Rizzo and said, we're not sure that what we said in Rizzo is consistent with Shaw. And the interesting point is the Shaw case came from that very same circuit. So now we have Rizzo, we have Blaisdell. Basically, all Shaw is really saying is there are no enhanced First Amendment rights. I believe so. So you still have your typical, normal First Amendment protections. I agree, Your Honor, and I do think Shaw is a First Amendment case, but it goes under the Turner analysis because they're policy-challenged. Our position is this is not a Turner case. There's not a policy that's being challenged here, at least that I could see. And so I don't think it goes under that Turner four-part test. I think we're dealing strictly with the garden variety retaliation claim, and our position is that with respect to court access, Mr. Wisniewski has no independent First Amendment right. And Mr. Pierce, who certainly would, isn't in this case. So what would the relief be? We would grant relief to Mr. Wisniewski based on a wrong done to somebody that's not a party. But he's attempting to help someone else. Yes. And, in effect, if somebody says you don't have that right to help someone else, then isn't he affected regardless whether Pierce perceives he is aided or not aided or sees no need to go forward on his own? I think, first, I think the duty was on Pierce. Pierce, I certainly agree that Pierce qualified for the help. Pierce has mental health issues. So there's no question he was not particularly adept. But all that needed to happen is he needed to say, I need a new legal reference aid. My guy got sent to the hole. That's all he needed to do. But if it's Wisniewski who gets punished because he has helped a fellow who qualified for assistance, why doesn't that rise to the level of a constitutional violation? There, I think what you're talking about is the removal from the job. And our position was... Well, I'm talking about maybe the whole litany of grievances. Okay. I think if the court were to find that that chain is met, then I think it does have to go back. But I don't think we need to go there because I think most of it he didn't file in time. I think he procedurally defaulted on his claim that it was because he had filed grievances about the library that he was reprimanded. I thought you conceded that these two claims that are before us today, the primary claims, were timely. Oh, I conceded that those two are timely. The others I'm not. Yes, the photocopying, which we take the position as de minimis. He had to photocopy on his own time for his own personal business. I just don't think that's the case. The leg brace, same thing. Pardon me? The leg brace. The leg brace, I think, was such a discreet act that the leg brace should have been appealed. It had nothing to do with the library. It was a different part of the jail, completely different people. So was it unreasonable for Wisniewski to say, I have a job, one of my prison jobs is to provide this assistance. Now this, Pierce was not assigned to me, but nonetheless it was part of my duty, so therefore it was reasonable for me to do this. I think it's only part of his duties if Pierce was assigned to him. There's no question that in the past Pierce had been assigned to him. It's unclear from the complaint whether with respect to the current action that he's complaining about, that Pierce was assigned to him. The normal procedure in the policy as attached is that the library staff assign the cases to the various inmate legal reference aides. Anything further? No. Okay, thank you, Your Honor. Mr. Hepner back. Thank you. What about the argument that Ms. Rand makes that if there was to be a claim here, it would be that of Mr. Pierce? Sure, Your Honor. I think you put your finger on it. A prisoner doesn't lose his First Amendment rights to communicate with other people entirely once he enters prison. A prisoner talking to another prisoner and then getting disciplined for that, if there were no legitimate penological reason for the discipline, that would be unlawful retaliation and unconstitutional. The same thing goes here. Mr. Pierce may indeed have his own right of access to the courts, right to assistance from Mr. Wisniewski or somebody else that he could plead, that he could have a claim, but Mr. Wisniewski has his own independent rights to associate, right to help somebody, right to talk to people, right to write, you know, legal briefs, grievances, et cetera, on behalf of himself or anybody else. So I don't think that Mr. Pierce's individual rights or whether he would also have a different claim changes Mr. Wisniewski's calculus for whether he has one. If we were to look at these as discrete claims, why wouldn't the inconvenience of having to come on his own time to make photocopies and confiscation or loss of $5 as a result of the confiscation of leg brace be viewed as de minimis? Sure. To be clear, I don't think we actually are challenging the photocopy ruling. I spoke to Mr. Wisniewski and he believes that it was actually fairly consequential because it came at a difficult time for him and prevented him from doing things, but I don't think that's clear on the face of the complaint and we aren't challenging the district court's ruling on that. That is de minimis. Okay. If I could just add a couple of things. Sure, go right ahead. I think, well, I think I've already said them. I guess if there are no further questions, I'll ask the court to reverse. Thank you. Now, I understand you did this case pro bono, is that correct? Yes, Your Honor. Well, you have our gratitude. You did a fine job and it's much appreciated. Thank you and thank you to your firm. Thank you very much. Thanks to both counsel for very well presented arguments.